IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

SHENA MAXWELL                                                                         PLAINTIFF

v.                                  Case No.: 4:20-cv-01033-LPR

MCKENDRA ADAMS                                                                       DEFENDANT

ORDER

Plaintiff Shena Maxwell filed this lawsuit alleging that Defendant McKendra Adams violated the Fair Debt Collection Practices Act ("FDCPA").[1]  Ms. Adams filed a Motion to Dismiss with Prejudice for lack of standing and for failure to state a claim.  For the reasons discussed below, the Motion is GRANTED in part and DENIED in part.  Ms. Maxwell's claims under 15 U.S.C. §§ 1692g and 1692e(11) are dismissed, but without prejudice.  Ms. Maxwell's claim under 15 U.S.C. § 1692i is not dismissed.

I. BACKGROUND[2]

Ms. Adams is a self-described debt collection attorney.[3]  One of her clients is Cannon Finance, Inc. ("Cannon Finance").  Cannon Finance is a company that "extends credit to consumers to finance" vehicle purchases.[4]  On September 26, 2015, Ms. Maxwell bought a car from Great American Auto LLC and financed her purchase by entering into a "Retail Installment

---

[1] The Court construes Ms. Maxwell's First Amended Complaint to raise solely FDCPA claims.  The Complaint has one stray reference to a provision of the Arkansas Fair Debt Collection Practices Act.  *See* Pl.'s First Am. Compl. (Doc. 9) ¶ 5.  The Court does not construe this as asserting a cause of action under that provision.  Even if it did, that provision is the state law equivalent of 15 U.S.C. § 1692e(11).  Because the Court finds that Ms. Maxwell does not have standing to bring her federal § 1692e(11) claim, Ms. Maxwell would likewise not have standing to bring in federal court the state law version of the same claim.

[2] All facts in this Background Section are taken from Ms. Maxwell's First Amended Complaint and are taken as true for purposes of this Order.

[3] Pl.'s First Am. Compl. (Doc. 9) ¶ 18.

[4] *Id.* ¶¶ 1–2.

Sale Contract" with Cannon Finance.[5] Ms. Maxwell allegedly defaulted on the financing contract, so Cannon Finance repossessed the car.[6] On August 29, 2018, Cannon Finance mailed a "Mandatory Notice of Private or Public Sale," informing Ms. Maxwell that the car would be sold at a private sale.[7] The proceeds from the sale did not cover the full amount of Ms. Maxwell's debt.

On August 29, 2019, Cannon Finance (represented by Ms. Adams) filed a lawsuit in Arkansas state court against Ms. Maxwell (and co-buyer Delta Millwood) to collect the remaining amount owed.[8] Eventually, Cannon Finance voluntarily dismissed that state court suit.[9] Ms. Maxwell brings the instant federal lawsuit against Cannon Finance's attorney, Ms. Adams, based on the way Ms. Adams handled the debt collection lawsuit in state court. Ms. Maxwell alleges that Ms. Adams violated the FDCPA.

A. The Statute

Congress passed the FDCPA to, among other things, "eliminate abusive debt collection practices by debt collectors."[10] In this law, Congress prescribed numerous procedures that debt collectors must follow. Relevant to this case are the procedures that govern a debt collector's "initial communication" with a debtor and the procedures that govern where a debt collector may file a lawsuit against a debtor.[11]

Whenever a debt collector initially communicates with a debtor, the debt collector must do two things. First, the debt collector must disclose that it is "attempting to collect a debt and that

---

[5] *Id.* ¶¶ 22, 24.

[6] *Id.* ¶¶ 26–27.

[7] *Id.* ¶ 28; *see also* Ex. 3 (Mandatory Notice of Private or Public Sale) to Pl.'s First Am. Compl. (Doc. 9-3).

[8] Pl.'s First Am. Compl. (Doc. 9) ¶¶ 30, 35.

[9] *Id.* ¶ 51.

[10] 15 U.S.C. § 1692(e).

[11] *Id.* §§ 1692e(11), 1692g, 1692i.

any information obtained will be used for that purpose."[12]  Second, within five days of the initial communication, the debt collector must provide the debtor with a so-called "verification rights notice" containing: (1) the amount of the debt; (2) the name of the creditor; (3) a statement that the debtor may dispute the debt within thirty days and that failure to dispute the debt allows the debt collector to assume the debt is valid; (4) a statement that if the debtor does dispute the debt within the thirty day period, the debt collector will provide information verifying the debt; and (5) a statement that upon written request within the thirty day period, the debt collector will provide the debtor with the name and address of the original creditor if that name and address is different from the current creditor.[13]  Formal legal pleadings, such as a complaint in a debt collection lawsuit, are exempted from the definition of "initial communication."[14]

If a debt collector decides to file a lawsuit against a debtor to collect the amount owed, there are only two options of where to file.[15]  One option is to file the lawsuit in the judicial district where the debtor "signed the contract sued upon."[16]  The other option is to file the lawsuit in the judicial district where the debtor resides at the time of filing.[17]

B.  Ms. Adams's Conduct

On August 29, 2019, Ms. Adams filed the debt collection suit on behalf of Cannon Finance against Ms. Maxwell and co-buyer Ms. Millwood in the District Court of Garland County, Arkansas.[18]  Under the FDCPA, that is the wrong place to file.  The debt collection lawsuit should

---

[12] *Id.* § 1692e(11).

[13] *Id.* § 1692g(a)(1)–(5); Pl.'s First Am. Compl. (Doc. 9) ¶ 1.

[14] 15 U.S.C. §§ 1692e(11), 1692g(d).

[15] There is a third provision, but it only relates to debts owed on real property.  Because this case is not about real property, this third option is irrelevant.

[16] 15 U.S.C. § 1692i(a)(2)(A).

[17] *Id.* § 1692i(a)(2)(B).

[18] Pl.'s First Am. Compl. (Doc. 9) ¶ 30.  The Court acknowledges that it is somewhat odd to refer to a plaintiff's attorney (as opposed to the plaintiff itself) as "filing" a lawsuit.  Usually, we speak of a plaintiff filing a lawsuit

have been filed in Pulaski County, Arkansas.  Ms. Maxwell had signed the financing contract with Cannon Finance in Pulaski County, Arkansas.[19]  Ms. Maxwell also lived in Pulaski County, Arkansas when that lawsuit was filed.[20]

Ms. Maxwell hired an attorney and filed her Answer raising affirmative defenses, including improper venue.[21]  Ms. Maxwell's co-buyer and co-defendant, Ms. Millwood, also filed an Answer as well as a Motion to Dismiss based in part on improper venue.[22]  Although Ms. Maxwell and Ms. Millwood both timely responded to Cannon Finance's Complaint, Ms. Adams submitted a proposed Default Judgment against Ms. Millwood (but not Ms. Maxwell) on October 22, 2019.[23]  The state court entered and filed that Default Judgment against Ms. Millwood on October 25, 2019.[24]  On October 29, 2019, Ms. Millwood moved to set aside the default judgment.[25]  The next day, Ms. Adams filed and served both a Motion to Vacate the Default Judgement and a Response

---

because the attorney is simply an agent of the plaintiff.  However, the FDCPA venue provision appears to be directed at the lawyer (not the creditor-plaintiff) even when the lawyer is filing a lawsuit as the agent of the creditor-plaintiff.  *See* 15 U.S.C. § 1692i.

[19] Pl.'s First Am. Compl. (Doc. 9) ¶ 4.

[20] *Id.*

[21] In her instant Complaint, Ms. Maxwell alleges that she "retained undersigned counsel to defend the debt collection lawsuit by asserting affirmative defenses based on improper venue and *forum non conveniens*." *Id.* ¶ 34.  Ms. Maxwell also alleges that she "hired and paid an attorney to defend the debt collection lawsuit based on the affirmative defenses of improper venue and *forum non conveniens*." *Id.* ¶ 57.  She also alleges that "[b]eing summoned to defend a lawsuit in a county where she did not reside or sign the contract caused her emotional distress and to incur attorney fees." *Id.* ¶ 4.  There is a slight quirk here.  For the first allegation, Ms. Maxwell cites Exhibit 5 to her First Amended Complaint.  But that Exhibit is a series of invoices for *Ms. Millwood, not Ms. Maxwell*.  The presence of invoices for Ms. Millwood does not necessarily negate the allegation that Ms. Maxwell paid the attorney as well.  At this stage, given the requirement of taking all non-conclusory allegations as true, the Court will proceed on the assumption that Ms. Maxwell paid her attorney.  However, at later stages, Ms. Maxwell must provide evidence of this payment.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (stating that "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation").

[22] *Id.* ¶¶ 36, 38.

[23] *Id.* ¶ 40.  Like Ms. Maxwell, Ms. Millwood has brought a federal suit against Ms. Adams in this Court alleging FDCPA violations based on Ms. Adams's conduct in the state court lawsuit.  *See Millwood v. Adams*, 4:20-cv-01035-LPR.  That suit will be addressed in an Order in that case.

[24] Pl.'s First Am. Compl. (Doc. 9) ¶ 41.

[25] *Id.* ¶ 42.

to Ms. Millwood's Motion to Dismiss.[26] Despite the default judgment snafu, the state court lawsuit was back on track.

Discovery began. On December 31, 2019, Ms. Adams emailed Ms. Maxwell's attorney responses to discovery requests.[27] On January 8, 2020, Ms. Adams filed and served a Motion to Voluntarily Dismiss the state court lawsuit.[28] The state court dismissed the suit without prejudice.[29] Ultimately, Ms. Maxwell did not have to pay any deficiency under the contract with Cannon Finance. In fact, Ms. Maxwell's instant Complaint indicates that any further attempts to collect the deficiency would be "absolutely barred under [Arkansas law]."[30]

The state court lawsuit could therefore be described as a victory for Ms. Maxwell. But she does not see it that way. On August 26, 2020, Ms. Maxwell filed the instant federal lawsuit.[31] Ms. Maxwell alleges that Ms. Adams violated the FDCPA when Ms. Adams filed the debt collection lawsuit in Garland County, Arkansas instead of Pulaski County, Arkansas. Ms. Maxwell also alleges FDCPA violations because one of the following constituted an "initial communication" that triggered an obligation to provide a verification rights notice: (1) the Motion to Vacate the Default Judgment; (2) the Opposition to Ms. Millwood's Motion to Dismiss; (3) the email containing the discovery responses; or (4) the Motion to Voluntarily Dismiss.[32] None of the motions, nor the email to Ms. Maxwell's attorney, nor the discovery responses attached to that

---

[26] *Id.* ¶¶ 43, 46.

[27] *Id.* ¶ 48; Ex. 14 (Discovery Responses) to Pl.'s First Am. Compl. (Doc. 9-14).

[28] *Id.* ¶ 51.

[29] *Id.* ¶ 53.

[30] *Id.* ¶ 7. Ms. Maxwell notes that in a separate case an Arkansas state court ruled that the Mandatory Notice of Private or Public Sale Cannon Finance used was insufficient under Arkansas state law. *Id.* Thus, any attempts to collect a deficiency would be barred under Arkansas's Uniform Commercial Code. *Id.*

[31] Pl.'s Compl. (Doc. 1).

[32] Pl.'s First Am. Compl. (Doc. 9) ¶¶ 43–52.

email contained a verification rights notice.[33]  No other written notices were sent within five days of any of these alleged "initial communications."[34]

In the instant case, Ms. Adams filed a Motion to Dismiss in response to Ms. Maxwell's original Complaint.[35]  After Ms. Maxwell amended her Complaint, Ms. Adams filed a Renewed Motion to Dismiss.[36]  The briefing is complete on the Renewed Motion.

## II.  DISCUSSION

Ms. Adams says Ms. Maxwell does not have standing to bring any of her claims.[37]  Ms. Adams's standing argument is a "facial attack."[38]  This requires the Court to accept as true all of Ms. Maxwell's non-conclusory factual allegations.[39]  The Court's analysis is limited solely to the face of Ms. Maxwell's First Amended Complaint.[40]

Article III of the United States Constitution only extends the federal judicial power to "cases or controversies."[41]  By requiring that plaintiffs have standing, federal courts ensure that

---

[33] *Id.*

[34] *Id.*

[35] Def.'s Mot. to Dismiss (Doc. 3).

[36] Def.'s Renewed Mot. to Dismiss (Doc. 10).  Ms. Adams incorporates her original Motion to Dismiss into her Renewed Motion, so the Court may cite both throughout this Order.

[37] Def.'s Mot. to Dismiss (Doc. 3) at 1; Def.'s Reply to Pl.'s Opp'n to Mot. to Dismiss (Doc. 14) at 1.  Ms. Adams also contends that even if Ms. Maxwell does have standing for her claim based on the missing verification rights notice, she has not sufficiently stated a claim upon which relief can be granted and therefore that claim should be dismissed under Rule 12(b)(6).  Ms. Adams's 12(b)(6) argument relates solely to Ms. Maxwell's claims about the verification rights notice.  Because the Court finds that Ms. Maxwell does not have standing for this claim (or the closely related claim under 15 U.S.C. § 1692e(11)), the Court does not reach the 12(b)(6) issue.  Ms. Adams has not launched a 12(b)(6) attack on Ms. Maxwell's improper venue claim.  For that claim, the Court is only concerned with whether Ms. Maxwell has standing.

[38] Def.'s Br. in Supp. of Mot. to Dismiss (Doc. 4) at 2.

[39] *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)).

[40] The face of Ms. Maxwell's First Amended Complaint includes all materials "necessarily embraced by the pleadings and exhibits attached to the complaint."  *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 668 (8th Cir. 2012) (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)).  Any additional factual allegations contained in Ms. Maxwell's Opposition to the Renewed Motion to Dismiss or her Response to Ms. Adams's Notice of Supplemental Authority are not considered.

[41] *Braitberg v. Charter Communications, Inc.*, 836 F.3d 925, 929 (8th Cir. 2016).

they do not step outside their constitutional boundaries and render binding decisions in disputes that do not rise to the level of a case or controversy. Thus, standing is the "irreducible constitutional minimum" that must be met before a federal court has jurisdiction to hear a plaintiff's claim.[42]

Article III standing has three requirements. First, the plaintiff must allege that it has "suffered an injury in fact."[43] The injury "must be both concrete and particularized and actual or imminent, not conjectural or hypothetical."[44] An injury is "particularized" when it "affect[s] the plaintiff in a personal and individual way."[45] An injury is "concrete" when it "actually exist[s]."[46] Second, the injury must be fairly traceable to the alleged wrongdoing of the defendant.[47] Traceability requires "showing the injury resulted from the actions of the defendant."[48] Third, a favorable judicial decision must be "likely" to cure the plaintiff's injury.[49]

A. *Ms. Maxwell's Standing for Claim Under 15 U.S.C. § 1692g*

Ms. Adams contends that Ms. Maxwell has not alleged an injury-in-fact. Ms. Maxwell alleges that "failure to give [a debtor] the information required by [15 U.S.C. § 1692g] is a concrete

---

[42] *Id.* (quoting *Lujan*, 504 U.S. at 560).

[43] *Lujan*, 504 U.S. at 560.

[44] *Braitberg*, 836 F.3d at 929 (quoting *Lujan*, 504 U.S. at 560) (internal quotations omitted).

[45] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

[46] *Id.* Concrete does not mean tangible. "Various intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). Ms. Maxwell says the harm alleged in her § 1692g and § 1692e(11) claims (failure to obtain information) are concrete because they are "analogous to a suit for an accounting at common law because both provide an aggrieved party the right to information important to them." Pl.'s Opp'n to Mot. to Dismiss (Doc. 13) at 17. Whether this is a fair comparison is a question for another day. Ms. Maxwell has not alleged a concrete injury because she does not allege that she was actually deprived of any information. Even if she was, she suffered no consequences from that deprivation. *See infra* notes 57-70 and accompanying text.

[47] *Lujan*, 504 U.S. at 560.

[48] *Oti Kaga, Inc. v. S.D. Hous. Dev. Auth.*, 342 F.3d 871, 878 (8th Cir. 2003).

[49] *Lujan*, 504 U.S. at 561.

harm that confers standing."[50] There are two ways to read this. The first way to read it is as Ms. Maxwell arguing that the violation of § 1692g is enough on its own to confer standing. The second way to read it is that Ms. Maxwell is asserting a so-called "informational injury."[51]

Option number one, the violation-as-injury argument, is understandable yet unavailing. When Congress passes a statute that creates new rights for individuals and gives those individuals a cause of action to enforce those rights, one could be forgiven for believing that any violation of those rights would be sufficient to confer standing.[52] For a while, many federal courts followed this line of thinking.[53] But no longer. In *Spokeo, Inc. v. Robins*, the Supreme Court clarified that while a violation of an individual's statutory rights may be a "particularized" injury, it is not necessarily a "concrete" one.[54] A "bare procedural violation, divorced from any concrete harm," is insufficient under Article III because a procedural violation "may result in no harm."[55] There must be something more than just the statutory violation. Ms. Maxwell must show that the specific alleged violation caused her harm.[56] As the Supreme Court recently noted, "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions."[57]

---

[50] Pl.'s First Am. Compl. (Doc. 9) ¶ 58.

[51] *See Ramirez*, 141 S. Ct. at 2214.

[52] *See Spokeo*, 136 S. Ct. at 1553 (Thomas, J., concurring) ("A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right.").

[53] *See Braitberg*, 836 F.3d at 929–30 (discussing pre-*Spokeo* cases in which the statutory violation alone was sufficient to confer Article III standing).

[54] 136 S. Ct. at 1548.

[55] *Id.* at 1549, 1550.

[56] *Id.* at 1550 (remanding the case because the lower court "did not address . . . whether the *particular* procedural violations alleged *in this case* entail a degree of risk sufficient to meet the concreteness requirement" (emphasis added)).

[57] *Ramirez*, 141 S. Ct. at 2205 (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019) (Barrett, J.)).

Option number two, the "informational injury" argument, is likewise defective. Ms. Maxwell does not allege that she did not have the information required by 15 U.S.C. § 1692g. Ms. Maxwell merely alleges that Ms. Adams failed to give it to her in the manner required by the FDCPA.[58] Nowhere in her instant Complaint does Ms. Maxwell claim that she did not know the amount of the debt she allegedly owed or the name of the creditor to whom the debt was owed.[59] She does not allege that she did not know she had an opportunity to dispute the debt.[60]

The closest that Ms. Maxwell comes to alleging an informational injury is that Ms. Maxwell "had a valid dispute . . . because Cannon Fin[ance] used a [Mandatory Notice of Private or Public Sale] that was insufficient under [Arkansas law]."[61] It seems that Ms. Maxwell is alleging that if Ms. Adams had provided a formal verification rights notice, Ms. Maxwell would have known about the insufficiency of the Mandatory Notice of Private or Public Sale and therefore would not have to pay the debt. This argument is problematic because a debtor is only entitled to additional information under § 1692g if the debtor decides to dispute the debt.[62] Here, Ms. Maxwell never alleges that she would have disputed the debt under § 1692g.[63] Thus, she does not actually allege that she missed an opportunity to obtain any information.[64] Even if she had

---

[58] Pl.'s First Am. Compl. (Doc. 9) ¶¶ 44–52.

[59] 15 U.S.C. § 1692g(a)(1)–2.

[60] 15 U.S.C. § 1692g(a)(3)–(5). It seems impossible for Ms. Maxwell to claim she did not know that she could dispute the debt, considering that by the time the alleged violation occurred she had retained an attorney and filed an Answer *disputing that she owed a debt to Cannon Finance*. *See* Ex. 7 (Ms. Maxwell's Answer in state court lawsuit) to Pl.'s First Am. Compl. (Doc. 9-7) at 3.

[61] Pl.'s First Am. Compl. (Doc. 9) ¶ 7.

[62] 15 U.S.C. § 1692g(a)(3)–(5).

[63] It would not make much practical sense to use § 1692g to dispute the debt, after all. Ms. Maxwell was already disputing the debt in state court and had the option to pursue discovery (an option she exercised) to obtain any information she felt that she needed but did not already have.

[64] As then-Judge Barrett put it when sitting on the Seventh Circuit, Ms. Maxwell's Complaint merely alleges that she was "missing some information that she did not suggest that she would ever have used." *Casillas*, 926 F.3d at 334 (Barrett, J.). *Casillas* was a case regarding insufficient notice of a debtor's verification rights under 15 U.S.C. § 1692g and was favorably cited multiple times by the Supreme Court in *Ramirez*.

alleged an intent to dispute the debt under § 1692g, there is no reason (from either the instant Complaint or § 1692g) to believe that Ms. Adams would have had to provide *any* information about the Mandatory Notice of Private or Public Sale as part of a formal verification under the FDPCA.[65]

Even if Ms. Maxwell alleged that she was *completely* deprived of *all* information under § 1692g (she did not and cannot allege this), she still did not allege any consequences from that deprivation. "An 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'"[66] Ms. Maxwell must display "downstream consequences" flowing from the informational deprivation.[67] But there are no such consequences alleged in the instant Complaint. Quite the opposite, in fact. The debt collection lawsuit was voluntarily dismissed by Ms. Adams and Cannon Finance. Ms. Maxwell's own First Amended Complaint here in federal court indicates that Ms. Adams and Cannon Finance cannot successfully bring any future actions against Ms. Maxwell to collect the debt. Ms. Maxwell did not suffer *any* consequences because of Ms. Adams's failure to provide a verification rights notice.

One could perhaps read Ms. Maxwell's references to incurring attorney fees as alleging an injury-in-fact flowing from Ms. Adams's alleged § 1692g violation. However, there are no allegations that any portion of Ms. Maxwell's attorney fees were related to her not receiving a formal verification rights notice. Instead, all references to attorney fees are in relation to her attorney raising the defense of improper venue, an allegation tied to Ms. Maxwell's § 1692i claim

---

[65] Verification is meant to ensure that the debt collector has identified the correct person. *See Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1003 (8th Cir. 2011). In the Eighth Circuit, a § 1692g verification could simply be an affidavit from the debt collector or creditor stating that its records show that this specific debtor owes a debt to the creditor. *Id.* at 999, 1003. Ms. Maxwell does not allege that Ms. Adams identified the wrong person.

[66] *Ramirez*, 141 S. Ct. at 2214 (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)).

[67] *Id.* (quoting *Trichell*, 964 F.3d at 1004).

10

(discussed below). Ms. Maxwell's instant Complaint does show that her attorney engaged in discovery, a process through which Ms. Maxwell and her attorney obtained information from Ms. Adams and Cannon Finance. But there are no allegations that Ms. Maxwell and her attorney would have been able to avoid discovery if she had received a formal verification rights notice. Any attorney fees related to discovery would therefore not be fairly traceable to the alleged § 1692g violation.[68] Thus, Ms. Maxwell does not have standing to bring her claim against Ms. Adams under 15 U.S.C. § 1692g.

*B. Ms. Maxwell's Standing for Claim Under 15 U.S.C. § 1692e(11)*

Ms. Maxwell's claim that Ms. Adams violated 15 U.S.C. § 1692e(11) meets the same fate as her § 1692g claim and for the same reasons. That provision requires a debt collector to notify a debtor that the debt collector is "attempting to collect a debt and that any information obtained will be used for that purpose."[69] Ms. Maxwell does not allege that she did not know Ms. Adams was a debt collector for Cannon Finance. By the time the alleged violation occurred, Ms. Maxwell had hired an attorney and filed an Answer disputing the debt. Thus, Ms. Maxwell had all the information required by § 1692e(11) by the time the alleged violation occurred. There is no concrete injury. There is no standing.

*C. Ms. Maxwell's Standing for Claim Under 15 U.S.C. § 1692i*

Ms. Maxwell claims that she has suffered an injury-in-fact because she had to pay an attorney to defend her in the state court lawsuit.[70] Loss of money is a concrete injury-in-fact that

---

[68] This analysis regarding attorney fees as an injury-in-fact applies equally to Ms. Maxwell's claim under 15 U.S.C. § 1692e(11). Even if she were alleging that attorney fees were an injury-in-fact flowing from that alleged violation, there are no allegations in Ms. Maxwell's First Amended Complaint to satisfy the traceability prong of standing.

[69] 15 U.S.C. § 1692e(11).

[70] Pl.'s First Am. Compl. (Doc. 9) ¶¶ 4, 34, 57. Ms. Maxwell also alleges a concrete harm because Ms. Adams's alleged violation presented "a real risk of harm [that debtors] will either incur additional time or expense to travel to the inconvenient forum or cannot defend themselves and risk entry of a default judgment." *Id.* ¶ 56. The *risk* of real harm is not a concrete injury sufficient to confer standing in a suit for compensatory monetary damages. The risk of

is recoverable under the FDCPA.[71]  A favorable judicial decision in this lawsuit would therefore cure Ms. Maxwell's injury.  Thus, the only remaining question is whether this injury is fairly traceable to Ms. Adams's conduct.

Ms. Adams says that Ms. Maxwell's attorney fees are not fairly traceable to filing the lawsuit in an improper venue.  According to Ms. Adams, any money lost paying an attorney is only traceable to the improper venue violation if Ms. Maxwell "hired an attorney to defend against a debt collection lawsuit, but only because it was filed in Garland County instead of Pulaski County."[72]  Put another way, Ms. Adams argues that Ms. Maxwell's financial injury is only traceable to Ms. Adams's alleged violation if Ms. Maxwell "would have proceeded pro se, if only she had been sued in the right county."[73]

Ms. Adams's analysis is too broad.  She may be correct that some of Ms. Maxwell's attorney fees would have been incurred even if the state court lawsuit had been filed in Pulaski County.  Still, Ms. Maxwell alleges that she had to pay her attorney to assert the defense of improper venue.  The only reason Ms. Maxwell's attorney had to raise that defense is because Ms. Adams allegedly violated 15 U.S.C. § 1692i by filing the lawsuit in Garland County, Arkansas.  Even if the portion of Ms. Maxwell's attorney fees attributable to raising that defense is very small,

---

harm must materialize into real harm.  *See Ramirez*, 141 S. Ct. at 2211.  Ms. Maxwell does not allege that this risk of harm ever materialized into real harm (i.e., she does not allege that she traveled to Garland County, Arkansas or that she had a default judgment entered against her for failure to appear).  Thus, this "risk" is not a concrete injury-in-fact.

Ms. Maxwell has also alleged that she suffered emotional distress from being sued in a foreign venue. Pl.'s First Am. Compl. (Doc. 9) ¶ 4.  This allegation may have provided another concrete injury for Ms. Maxwell to bring her improper venue claim.  *See Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 691–92 (8th Cir. 2017) (finding that "the risk of mental distress" is a concrete injury for a suit under 15 U.S.C. § 1692f(1)).  Because Ms. Maxwell has standing to bring her improper venue claim based on incurring attorney fees in the state court lawsuit, the Court does not need to address whether the emotional distress is a separate concrete injury.  Whether Ms. Maxwell may recover for the alleged emotional distress is a question for a later time.

[71] The FDCPA allows the recovery of "any actual damages sustained" by a debtor because of a debt collector's violation.  15 U.S.C. § 1692k(a)(1).

[72] Def.'s Mot. to Dismiss (Doc. 4) at 5.

[73] Def.'s Reply to Pl.'s Opp'n to Renewed Mot. to Dismiss (Doc. 14) at 2.

it is still a loss of money that is fairly traceable to Ms. Adams's alleged violation.[74] Thus, Ms. Maxwell has standing on her improper venue claim.

## CONCLUSION

Ms. Adams's Motion to Dismiss with Prejudice is GRANTED in part. Ms. Maxwell does not have standing for her claims that Ms. Adams violated 15 U.S.C. §§ 1692g and 1692e(11). Ms. Maxwell has not alleged a concrete injury as a result from any of those alleged violations. These claims are dismissed, but without prejudice.[75]

The remainder of Ms. Adams's Motion to Dismiss with Prejudice is DENIED. Ms. Maxwell has standing to bring her claim that Ms. Adams violated 15 U.S.C. § 1692i. Ms. Maxwell has alleged a concrete injury—monetary loss—that is fairly traceable to Ms. Adams's alleged violation of § 1692i.

IT IS SO ORDERED this 24th day of September 2021.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[74] *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'").

[75] "A dismissal for lack of standing is a dismissal for lack of subject-matter jurisdiction. 'A district court is generally barred from dismissing a case with prejudice if it concludes subject matter jurisdiction is absent.'" *Dalton v. NPC Int'l, Inc.*, 932 F.3d 693, 696 (8th Cir. 2019) (quoting *Cnty. of Mille Lacs v. Benjamin*, 361 F.3d 460, 464–65 (8th Cir. 2004)).